Cowen, J.
The question grows out of a difference be- ■ tween, the government and the defendant, in their construction of the statutes relative to the justices’ courts and justices of the peace of the city of Hudson. These statutes are, chapter 218, of April 16th, 1822, and chapter 176, of April 16th, 1830. The first, directed three persons, to be called “ the justices of the justices’ court in the city of Hudson,” with a clerk of such court, to be commissioned respectively ; and that in the same commissions they should be appointed justices of the peace in and for the county of Columbia, with all and singular the powers in criminal *96 cases incident to the office of justice of the peace. The jurisdiction of this court was extended to all actions then cognizable before a single justice of the county of Columbia; and power conferred to proceed in the same manner except that they or a majority of them were to appoint times and places of holding courts, and two at least to hold them jointly. They were declared a court of record, were to have a seal, &c. and other provisions were added corresponding to the peculiar frame of the court. The last mentioned act provided, that there should be appointed in and for the city of Hudson, two additional justices of the peace, each to possess all the powers and perform the duties then conferred by law upon other justices, &c. in any of the towns or counties of this state. The appointment to either office was to be by the senate on the nomination of the governor, the commission by him, and the tenure of office four years, unless sooner removed by the senate on the recommendation of the governor. '
On the 20th of April, 1836, the defendant, under the act of 1822, was commissioned ; and took the oath and entered upon the duties of his office on the first of May, which he continued to exercise till the 13th of March, 1840. On the 23d of January, 1838, he was also commissioned under the act of 1830; and took the oath and entered on the duties of this office on the 26th. He continued to exercise the duties of this office till, on the 13th of March, 1840, the governor nominated, and by and with the consent of the senate, appointed the relator a justice of the peace for the city of Hudson, in the place of the defendant, under the act of 1830. A commission issued to him dated March 13th ; of all which, as alleged, the defendant had notice. The relator took the oath and entered on the duties of his office, on. the 19th.
1. It is admitted by the attorney general, that when the commission of the relator issued, the defendant's term of office had not expired by its own limitation; but said, that it was void, inasmuch as the defendant then held the incompatible office of a justice in the justices’ court. It is *97 insisted that, as the statute provided for additional justices, the governor and senate had no power to unite the two offices,- under the two different statutes, in the same person ; and that the defendant was, therefore, ineligible. Admitting that he was so, he was not absolutely ineligible. The appointment was therefore valid in itself, and might become operative on the defendant vacating his seat in the justices’ court. There is not a doubt that he had a right to elect whether he would hold his seat there, or accept his new appointment. The appointment was itself valid, though, in the view taken, it might be frustrated in its effect by a refusal to accept the office. The rule is laid down and the cases cited in Angel §* Ames on Corp. 255, 1st ed. The appointment to one office, says the book, is a temporary disqualification, which renders the office ineligible to, the other incompatible office; though it is admitted, at the same page, that the appointee may accept the new one on abandoning the other.
2. It is therefore said, that by continuing to act in the justices’ court, this was rather an election to hold his first office, notwithstanding- his accepting, taking the oath, and entering on the duties of the second. The contrary is entirely settled; and the effect directly opposite to that which is supposed to have followed. It is said, in the book already cited, (same page,) that a resignation by implication may take place by being appointed to and accepting a new office, incompatible with the former one. And it is added in a note (n. 4,) that “This is an absolute determination of the original office, and leaves no shadow of title to the possessor; so that neither quo warranta nor amotion is necessary before any other .may be elected. (Vid. Willcock on Municipal Corp. 240, pl. 617, to the same point. Ld. Mansfield, in Rex v. Trelawney, 3 Burr. 1616. Butter, J. in Milward v. Thatcher, 2 T. R. 87.)
It becomes therefore unnecessary to decide, whether the two offices were or were not incompatible. If they were, the disqualification was removed by an acceptance of the new' office: If they were not, then there was not even a *98 qualified disability* In either view, the appointment of 1838 was valid, the acceptance rightful, and the defendant must be taken as rightfully holding his office under the act of 1830, for its unexpired term, when the relator was nominated and appointed to his place.
3. But it is insisted that the appointment of the relator in the place of the defendant was in.itself, and uno flatu, a removal of the latter; and it becomes necessary to inquire whether this be so. The defendant held subject to removal by the senate, on the recommendation of the governor. (1 R. S. 113, 2d ed. § 44.) I think the exercise of this power to recommend removals by the governor, need not be accompanied with the assignment of any cause. The power both in the governor and senate is legally naked and absolute; and I apprehend the only inquiry is, whether the nomination and appointment of the relator was, on the face of it, incompatible with the defendant still holding his place. If it was, then I think the language and legal effect are equivalent to a separate recommendation of removal and a vote of the senate, in terms, for such removal. A body possessing the absolute power to remove an officer, appoints another in his place. The same office could not be holden by both at the same time; and no intent is expressed that the new appointment should wait for its operation till the first had expired. The words of nomination, appointment and commission, are in the present tense, and all must have been void unless the old incumbent was displaced. It strikes me, therefore, that, looking at the whole transaction, it expressed the intent to remove as plainly as if it had been put in so many words ; and that the effect is the same as if the intent had been carried out by a direct proceeding.
The authorities too are in point. (Godbolt, 105, pl. 123. Pepis’ case, 1 Ventris, 342. Bowerbank v. Morris, Wallace’s Rep. 119. Hennen’s case, 13 Peters, 225, 230.) The case in Godbolt was this: A writ issued forth to choose a coroner for the hundred, in the place of J. S.; and one *99 was chosen. It was moved by Sergeant Snag, whether thereby the first ceased to be coroner presently, until he had been discharged by writ. Bodes and Windham, Js. : “ He ceases presently; for otherwise there would be. two officers of one coronership which cannot be. Also the writ is quad loco J /S', eligi facias, Spc. unum coronatorem ; and he cannot be in place of the first, if the first do not cease to be coroner. So if any be made commissioners, and afterwards others are made commissioners in the same cause, the first commission is determined.” As to the coroner, see the form of a writ for his election in Fitz. N. B. 163, Writ de coronatore eligendo. The writer there says, the first coroner should be discharged by writ; but that is expressly denied in Godbolt. The case in 1 Venir, was this: The town of Cambridge had power by charter, to choose a recorder, either for term of life, or at the will of the electors. They chose Pepis at the will of the electors. Afterwards, without discharging him by seal, they chose and appointed Lord Allington, recorder, under their common seal. The court held that this act removed Pepis. In Bowerbank v. Morris, sales of property had been made by a U. S. marshal, after his successor had been commissioned and sworn in, and given notice to the former marshal. The sales made after notice were held to be void, though such as had been made before were sustained. Tilghman, C. J. said, “ A removal from office may be either express, that is, under a notification by order of the president of the United States, that an officer is "removed; or implied, by an appointment of another person to the same office.” Griffith, J. agreed, and proceeded to consider the question more at large. He said, that to work an implied removal, there must be, 1. A nomination to and a concurrence by the senate; 2. A commission signed; 3. A delivery of it to the new officer; and 4. It must be accepted and shown to the old one. Indeed, the whole case seems to have been debated on the question, from what time should the new commission operate as a supersedeas? No one thought of contending that a new *100 appointment inconsistent with an old one holden during pleasure was not an implied revocation. Such a revocation was also held clearly to follow from- a similar act in the late case of Hennen, (13 Pet. 230, 261.) It is impossible for me to perceive the least difference in principle between the case at bar-, and that of Bowerbank v. Morris. In both, the removing power indicated their .pleasure to remove; not in direct terms, but by a new appointment.
The statutes declaring that certain officers shall hold during a certain term, subject to removal by the senate, on. the recommendation of the governor, (vid. 1 R. S. 98, 2d ed. § 15 and 16, id. 113, § 44,) do but adopt another mode of expression for saying, that the office shall be holden at the pleasure of the governor and senate. The cases cited, therefore, apply to, and are, I think, decisive of the point before us.
It is objected, however, that the replication should have pleaded the act of the governor and senate directly as a removal ; and not sought, as it does, to infer the removal argumentatively. The replication is, no doubt, formally defective in that respect; and .the defect appears to have been properly assigned as cause of demurrer. An act should be pleaded according to its legal effect. An act working a removal, should, in pleading, be called a removal. The mere evidence should not be pleaded. The replication should have said, the defendant was removed on the recommendation of the governor, according to the statute. The rule requiring a direct, instead of a circuitous allegation in pleading, is elementary, and scarcely requires the quotation of authority for its support. The replication needs amendment.
The want of alleging due notice, was also made an objection on the argument; and I do not see that any notice of Whiting’s acceptance and qualification was averred, though there is a general averment of notice in respect to the other facts. The defect, if there be one, is not very distinctly assigned among the special causes of demurrer; nor am I prepared to say how full and particular the notice *101 should be. In Bowerbank v. Morris, the acts of the former officer were held good in respect to third persons till notice served. How it would be as between the government and the officer, it was not necessary to decide. In Hennen’s case, Thompson J. said, “the mere appointment of a successor would, per se, be a removal of the prior incumbent, so far at least as his rights were concerned.” But in that case there seems to have been sufficient notice. (Vid. 13 Peters, 225, 6, and 261.) That law would be unreasonable, which should subject the incumbent to a suit, perhaps to damages and costs,. without due notice. The old books which I have cited, seem to recognize the doctrine that the revocation must be effected by an act of the same solemnity and degree as that by which the appointment was made; and such is the general rule. The authority of arbitrators who are appointed by seal cannot be revoked except by seal. There is no dispute in the case at bar that the rule has been complied with, up to the time of issuing the new commission. But it would seem to follow that the new commission should be shewn, or full notice be given of it to the old incumbent, before he can with propriety be proceeded against by the government. Griffith, J. cites and considers several cases on the point of notice in Bowerbank v. Morris, (Wallace's R. 130 to 133,) and concludes, that where the removal is not by a direct discharge, but merely by the operation of a new commission or appointment, the removal dates from the time when notice of the new commission is given to the old officer. An office cannot be considered as filled till acceptance, which may possibly be an essential prerequisite to an implied supersedeas. (Vid. Johnston v. Wilson, 2 N. Hamp. JR. 202.) It is by no means clear, therefore, that notice of acceptance and qualification by the new incumbent is not necessary in addition to the fact that a commission has issued. However, it is not necessary to pass now upon the question whether even any notice were necessary. The question is most likely no more than formal; for it is highly probable that notice of the new commission and ac *102 ceptance was in fact communicated to the defendant in some effectual way before this information was filed ; and the general averment of notice may be sufficient. I have preferred, for obvious reasons, to consider the question of right, though on a replication, in one respect at least, formally defective. On that question I am against the defendant. But as I think there should be an amendment in the allegation of removal, the attorney general can, on the view which I take of the merits, also insert a more full allegation in respect to the subject of notice, provided he shall deem any further allegation to be necessary. The general allegation of removal, to which we all think he must resort, would possibly import notice; and the form of it will then remain to be considered on the evidence at the trial, should the case come to that.
Bronson, J.
The defendant is entitled to judgment on both of the demurrers. In relation to the first replication, I shall add nothing to what has already been said. The second replication admits that the defendant was lawfully in the office, and does not show,'unless it can be made out by way of argument and inference, that he has been removed. The demurrer is special, and points out this particular defect.
But the replication is bad in substance. It does not show a removal, even by way of argument or inference. The defendant could only “be removed by the senate on the recomm,endation of the governor.” (1 R. S. 123, § 41.) The attorney general neither alleges a removal by the senate, nor a recommendation by the governor to remove. The allegation is, that “ the governor of the state of New-York duly nominated, and, with the consent of the senate, appointed, Spencer Whiting a justice of the peace for the said city of Hudson, in the place of the said Richard Carrique.” This is the language, both of the constitution and the laws, in relation to appointments to office, and has nothing to do with removals. “ The governor shall nominate, by message in writing, and with the consent. of the senate, *103 shall appoint all judicial officers.” (Canst. Art. 4, § 7.) Justices in cities, and various other officers, “ shall be nominated by the governor, and appointed by him, wii/i the consent of the senate.” (1 R. S. 107, § 9.) The facts stated in the replication have no necessary connection with a removal from office, and can prove nothing, on that subject.
If the replication gives the" facts truly, let us see how the matter probably stood when the business was transacted. The governor sends a message to the senate, saying, “I nominate Spencer Whiting to the office of justice of the peace for the city of Hudson, in the place of Richard Carrique :” and the response is, “ Resolved, that the senate consent to the appointment.” And then a commission issued. We have nothing here but a nomination and appointment by the governor, with the consent of the senate. There is no “ recommendation by the governor” to remove any one from office, nor has any one been “ removed by the senate.”
It is said, that inasmuch as the relator was nominated and appointed a justice of the peace in the place of the defendant, the latter was necessarily removed. But no such consequence follows. When an office has once been filled, it is, I believe, the usual, if not the uniform course, to nominate and appoint a new officer in the place of the former incumbent. And this is so, whether the old officer is holding over after his regular term has ended, or whether the office has become vacant in some of the many ways in which that event may happen before the expiration of the regular term. (1 R. S. 122, § 34.) I find on looking at my commission, that I was appointed “a justice of the supreme court in the place of Jacob Sutherland, resigned and I recollect that my brother Cowen was appointed to the same office in the place of another judge who had resigned his trust some time before. These examples are sufficient to show, that the nomination and appointment of A. to an office in the place of B., does not necessarily imply that B. is removed. He may have been holding over *104 after his regular term was at an end, waiting the appointment of a successor. He may have died, resigned, or ceased to be an inhabitant of the district for which he was appointed; or the office may have become vacant in several other ways. If the defendant had been first regularly removed from the office, the nomination of the relator would, I presume, have been made in precisely the same form that it seems to have been submitted without such prior removal: “ I nominate Spencer Whiting to the office of justice, &c. in the place of Richard Camque.”
It is undoubtedly true, as a general rule, that where an •office is held during the pleasure of the appointing power, the appointment of a successor will operate as a removal of ' the former incumbent. But here the office was not held during pleasure, but for a specified term. And besides, the general rule cannot, I think, apply where, as in this case, different modes are prescribed by law for doing the two acts. Appointments to office are to be made by the governor, with the consent of the senate: removals from office are to be made by the senate, on the recommendation of the governor. Although both must concur in doing either act, yet there is some difficulty in saying that the appointing and the removing power are identical. The efficient agent in the one case, is the governor; in the other, it is the senate. But aside from this consideration, the modus operandi has been prescribed by law, and it differs in the two cases. That is enough to settle the question. Although it is not the policy of our institutions to give men a very firm hold upon office, they can only be removed in the mode prescribed by law. The importance of adhering to this rule may be sufficiently illustrated by the particular case now before us. Enough has already been said to show that the senate may have consented to the appointment of the relator, without the slightest suspicion that it was removing the defendant from office. But had the statute been followed—had the governor recommended the removal of the defendant—the senate could not have been mistaken as to the nature or consequences of the act which it was invited *105 to perform. The replication is, I think, very far from showing, in the language of the statute, that the defendant has been “removed by the senate, on the recommendation of the governor.”
It is hardly necessary to say, that I speak of this matter as it appears upon the pleadings, without intending to intimate that a better case for the relator cannot be made out. But if nothing has been done beyond what may be fairly inferred from the replication, I am of opinion that the defendant is right, and the relator is wrong. The defendant is entitled to hold, because he has not been removed; and the relator has no title to the office, because there was no vacancy to be filled at the time he received his commission.
Nelson, Ch. J., concurred in opinion with Mr. Justice Bronson.
Judgment for defendant; leave to amend on the usual terms.